IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH E. RICKERSON, #319515
    Plaintiff,

vs.                                       Case No.: 3:12cv54/MCR/EMT

CLERK DON W. HOWARD, et al.,
    Defendants.

## ORDER, REPORT AND RECOMMENDATION

Plaintiff has paid the initial partial filing fee, and this cause is before the court upon Plaintiff's civil rights complaint filed pursuant to Title 42 U.S.C. § 1983 (doc. 1), along with his motion to amend or correct one word in the complaint (doc. 12).

### BACKGROUND

Plaintiff is an inmate in the custody of the Florida Department of Corrections and is currently incarcerated at Graceville Correctional Facility (*see* doc. 17). Named as Defendants in this action are Okaloosa County Clerk of Court Don W. Howard, and Deputy Clerks V. Cason and J. Plund.[1] Plaintiff indicates in the complaint that he was convicted after a jury trial of second degree murder and sentenced to life in prison in December of 2000 (doc. 1 at 5). He asserts that the Attorney General's Office admitted in an answer brief filed in state court on an unspecified date,[2] that Clerk of Court Don Howard "was holding Brady v. Maryland material inside his office illegally, for the State Attorney Office" (*id*.). Plaintiff states that he requested the "Brady v. Maryland" materials,

---

[1] Plaintiff's submission at doc. 12 indicates that the correct spelling of this Defendant's name is "Piland" (doc. 12). The court will therefore refer to this Defendant as such.

[2] The court has verified that the state court case number identified by Plaintiff, 1D-09-3377, corresponds with an appeal filed by Plaintiff in the First District Court of Appeal in July of 2009. The state's answer brief to which Plaintiff refers was filed on August 31, 2009. *See* http://199.242.69.70/pls/ds/ds_docket.

which he also refers to as "non-public documents," on January 20, 2009.[3] He alleges that Defendant V. Cason responded to Plaintiff's request by stating, "There is not at this time an order signed by a Judge restricting disclosure of documents. However these are non-public documents." (*id.*). After receiving this response, Plaintiff contacted Cason and requested copies of the documents and asked how much the copies would cost (*id.*). He also explained to Cason what had been stated in the Attorney General's answer brief, thus placing Cason on notice about "what the State Attorney had done" and how the Attorney General viewed the documents at issue (*id.*). Defendant Cason then informed Plaintiff that the only record the court had was the docket sheet that was sent to Plaintiff. Plaintiff asserts that on November 29, 2011, nearly three years after his initial request, he requested a complete copy of "the non-public documents file" (*id.*). On December 5, 2011, Defendant Piland responded to Plaintiff's request by advising that once the clerk had an accurate count of all non-public documents, Plaintiff would be advised of the cost (*id.* at 6). On December 12, 2011, Piland advised that there were 253 pages of non-public documents. Plaintiff promptly responded, advising Piland of what the Attorney General had stated in its answer brief and that Plaintiff would be forwarding the $253.00 in order to obtain the non-public documents (*id.*). Defendant Piland then informed Plaintiff on December 16, 2011, that "[i]f it was filed with the State by FDLE but never filed with the clerk, then we don't have it" (*id.*), a statement Plaintiff characterizes as a lie because Defendants Cason and Piland and the special prosecutor from the Attorney General's office had seen the "illegally held" documents in question in Defendant Howard's files. Plaintiff asserts that the Okaloosa County Clerk of Court has held these documents "illegally" from him and that he and the Attorney General's Office both believe that these non-public documents will exonerate Plaintiff of the crime charged (*id.*).

Plaintiff asserts that: (1) each Defendant violated his or her ministerial duties; (2) that no Defendant had a right or duty to make the documents non-public without a judge's order; (3) that each Defendant violated Plaintiff's constitutional and due process rights by concealing the

---

[3] As previously noted, the state court docket reflects that the state's answer brief was filed on August 31, 2009. Thus, it is unclear how Plaintiff was aware of the existence of the documents on January 20, 2009, the date on which he states he requested them. It may be that Plaintiff actually requested the documents at a later date, after reviewing the state's answer brief, but the date on which he actually requested them does not affect the analysis in this Report or the undersigned's recommendation.

documents from Plaintiff and thwarting a meaningful appellate process; and (4) that each Defendant continues to violate Plaintiff's right to access to the court by continuing to conceal these documents. He further contends that the deprivation of these documents was a violation of his Fifth and Fourteenth Amendment rights, a violation of due process, and a violation of the prohibition on cruel and unusual punishment.

## ANALYSIS

<u>Prior Litigation History</u>

Section IV of the complaint form requires Plaintiff to disclose information regarding prior civil cases he filed in state and federal court (*see* doc. 1 at 3).  Question C of Section IV asks, "Have you initiated other actions (besides those listed above in Questions (A) and (B)) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?" (*id.* at 4).  Where there is a parenthetical area to mark either a "Yes" or "No" answer to this question, Plaintiff marked "No" (*id.*).  Thus, Plaintiff has in effect stated that he has <u>never</u> initiated other actions in federal court that relate to the fact or manner of his incarceration or the conditions of his confinement.  Question D of Section IV of the complaint form asks, "Have you ever had any action in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed." (*id.* at 4).  Where there is a parenthetical area to mark either a "yes" or "no" answer to this question, Plaintiff marked "No" (*id.*).  Thus, Plaintiff has in effect stated that he has had no actions in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service.

At the end of the civil rights complaint form, Plaintiff signed his name after the following statement on the form: "**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT**" (doc. 1 at 7).

In light of 28 U.S.C. § 1915(g), this court must independently investigate the prior filings of a prisoner to enforce the so-called "three strikes" provision of that statute.[4]  The information from Section IV of the form is also useful to the court in other ways.  The information helps the court to consider whether the action is related to or should be considered in connection with another action, or whether a holding in another action affects the current action.  Further, since prisoner plaintiffs generally proceed pro se, the information helps the court determine their litigation experience and familiarity with the legal terrain of the current action.  The time spent verifying the cases a plaintiff has filed but failed to identify, as well as the dispositions of those cases, can be considerable.[5]

Upon review of the docket, the clerk of court has advised, and this court takes judicial notice, that as of the date Plaintiff filed his complaint, he had previously filed Rickerson v. Gills, et al., Case No. 5:11cv279/MMP/GRJ.[6]  This case, which relates to the conditions of Plaintiff's confinement, has been served on the defendants and is currently pending in this district.  Plaintiff did not list this case in Section IV of his complaint (*see* doc. 1 at 3–4), even though it qualified as a federal court action that is responsive to Question C and should have been included in Plaintiff's answer to that question.

Additionally, Plaintiff has stated on the complaint form, under penalty of perjury, that he has not initiated other actions in state court dealing with the same or similar facts/issues involved in this action (doc. 1 at 3).  This assertion is suspect, as the court has ascertained that Plaintiff has pursued at least two cases against Defendant Howard all the way to the Supreme Court of Florida.  *See* Rickerson v. Howard, 42 So. 3d 800 (Fla. 2010) (Table) (dismissing appeal for want of jurisdiction); Rickerson v. Howard, et al., 44 So. 3d 1178 (Fla. 2010) (Table) (denying writ of prohibition).

---

[4] Section 1915(g) provides that if a prisoner has had three (3) prior actions dismissed as frivolous or malicious or for failing to state a claim, the prisoner may not bring an action in forma pauperis unless he or she is "under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

[5] "[T]he task of counting strikes involves more than sophomoric arithmetic.  Courts must search records of the prisoner's prior federal cases to determine whether judicial officers 'on 3 or more prior occasions' entered orders of dismissals and, if so, whether the reason for the dismissals were frivolousness, mailciousness or failure to state a claim upon which relief may be granted."  Rivera v. Allin, 144 F.3d 719, 726 (11th Cir. 1998) (citing 28 U.S.C.A. § 1915(g)), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

[6] The inmate number of the plaintiff in Case No. 5:11cv279/MMP/GRJ, #319515, is the same as Plaintiff's.

Case No.: 3:12cv54/MCR/EMT

The court has authority to control and manage matters such as this pending before it, and Plaintiff's pro se status does not excuse him from conforming to acceptable standards in approaching the court. If the court cannot rely on the statements or responses made by the parties, the quality of justice is threatened. The court will not tolerate false responses or statements in any pleading or motion filed before it. Here, Plaintiff falsely responded to a question on the complaint form, as detailed above. Plaintiff knew, or from reading the complaint form should have known, that disclosure of his prior action(s) was required and that dismissal of the action may result from his untruthful answers.[7] If Plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form. Furthermore, if word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants. Plaintiff's failure to provided truthful and complete information about his litigation history is sufficient to warrant dismissal of his case. In any event, regardless of the false responses on the complaint form, the complaint is subject to dismissal for failure to state a claim.

Substantive Analysis

Since Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals for failure to state a claim under 1915(e)(2)(B)(ii), which tracks the language of Fed. R. Civ. P. 12(b)(6), are governed by the same standard as that rule. Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. See Pielage v. McConnell, 516 F.3d 1282 (11th Cir. 2008); Thaeter v. Palm Beach County

---

[7] Indeed, section IV of the complaint form includes the following notice: "FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL." (*see* doc. 1 at 3) (emphasis and capitalization in original).

Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006); Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  Plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and his complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65, 1973 n.14, 167 L. Ed. 2d 929 (2007) (declining to apply a heightened pleading standard, and abrogating Conley v. Gibson, 355 U.S. 41, 47 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46)).  A complaint is subject to dismissal for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)).  Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1263 (11th Cir. 2004)).  Upon review of Plaintiff's complaint, the court concludes that Plaintiff has not presented an actionable claim and that sua sponte dismissal is therefore warranted. Vanderberg v. Donaldson, 259 F.3d 1321, 1323 (11th Cir. 2001).

     Pared to its essence, Plaintiff's complaint is that Defendants failed to turn over, upon his request nine years after his conviction, allegedly exculpatory evidence retained in the possession of the Okaloosa County Clerk of Court.  Plaintiff alleges these actions violated Brady v. Maryland, 373 U.S. 83, 87 (1963).  Brady held that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  *Id.*  It is no longer imperative that there be a request for the production of such evidence. Kyles v. Whitley, 514 U.S. 419, 433–34 (1995); United States v. Agurs, 427 U.S. 97, 110 (1976); *see also* United States v. Scheer, 168 F.3d 445, 451 (11th Cir. 1999) (favorable, exculpatory, or impeachment evidence that is material must be produced regardless of request).  A successful Brady violation claim requires a showing that: (1) the prosecution possessed evidence favorable to the accused (including impeachment evidence); (2) the defendant did not possess the evidence nor could he have obtained

it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different.  United States v. Simms, 385 F.3d 1347, 1357 (11th Cir. 2004); United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002);  United States v. Schlei, 122 F.3d 944, 989 (11th Cir. 1997).  However, the case law is clear that the Brady obligation falls upon prosecutors.  Brady does not create a duty on the part of individuals such as the Defendants in this case who are merely neutral records custodians and were not involved in the prosecution of Plaintiff's case.

Plaintiff also claims that Defendants violated his right to be free from cruel and unusual punishment under the Fourteenth Amendment.  The Fourteenth Amendment, however, applies to pretrial detainees.  *See* Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977); Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008); Cagle v. Sutherland, 334 F.3d 980, 985–86 (11th Cir. 2003) ("Because [the inmate] was a pretrial detainee, his section 1983 claims are based on the due process clause of the Fourteenth Amendment."); Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) ("[T]he Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees.") (quoting Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994)).  Plaintiff was not a pre-trial detainee at the time of Defendants' actions.  Regardless, the cruel and unusual punishment clause under either the Fourteenth Amendment or Eighth Amendment, which applies to convicted prisoners such as Plaintiff, is inapposite to his claims. Defendants did not inflict "punishment" on Plaintiff.  *See* Austin v. United States, 509 U.S. 602, 609–10 (1993) ("The purpose of the Eighth Amendment, putting the Bail Clause to one side, was to limit the government's power to punish . . . .  The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment.  The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' . . . [The operative] question is . . . whether [the challenged government conduct] is punishment.") (quoting Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257 (1989) (other citations omitted); *see also* Ingraham v. Wright, 430 U.S. 651, 664–67 (1977) (Cruel and Unusual Punishments Clause of Eighth Amendment was designed to protect those convicted of crime and circumscribes criminal process in three ways:  it limits kinds of punishment that can be imposed on

those convicted of crimes, it proscribes punishment grossly disproportionate to severity of crime, and it imposes substantive limits on what can be made criminal and punished as such.).

Plaintiff also contends that Defendants violated his Due Process rights by requiring that he "stand trial and defend himself against charges that these Defendants knew" were based on "perjur[ious] material" (doc. 1 at 9).  Even if the court accepts for sake of argument that Defendants knew of the existence of the alleged Brady material at the time of Plaintiff's trial in 2000, or knew of its relevance to Plaintiff's case (neither of which is supported by the factual allegations in this case), Defendants had no legal duty to Plaintiff to disclose such evidence to Plaintiff or his counsel.  To the extent Plaintiff claims that he was "deprived of a fair trial" due to the fact that the alleged exculpatory evidence was not revealed at the time of or even after his trial, the blame for this does not lie with the named Defendants, and they cannot be held liable for same.

Finally, Plaintiff's damages claims are arguably subject to dismissal under Heck v. Humphrey, 512 U.S. 477 (1994).  Although Plaintiff does not directly request release, he essentially asserts that he is being illegally confined by the State.  In Heck, the Supreme Court ruled that a state prisoner cannot bring a § 1983 damages action directly challenging his confinement until and unless the reason for his continued confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or otherwise called into question by a federal court's issuance of a writ of habeas corpus.  *Id*. at 486–87.  Later, in Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended Heck to bar § 1983 actions that do not directly challenge confinement, but instead challenge procedures which necessarily imply unlawful confinement.  *Id*. at 648.  Here, Plaintiff's damages claims, if successful, would necessarily imply the invalidity of his convictions on the charges against him.  Plaintiff's confinement has not been remedied by any of the procedures listed in Heck, and as such his damages claims are therefore not cognizable under § 1983, and should be dismissed.

"Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint."  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).  However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3)

where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  Here, amendment would be futile; therefore, the Court may dismiss this case without providing opportunity for amendment.  Therefore, as Plaintiff cannot successfully bring his action as a violation of 42 U.S.C. § 1983, the court is satisfied that Plaintiff's complaint lacks an arguable basis in law or fact and that it fails to state a claim.

Accordingly, it is **ORDERED**:

Plaintiff's motion to amend or correct (doc. 12) is **DENIED as moot** in light of this recommendation.

And it is respectfully **RECOMMENDED**:

That this cause be **DISMISSED** as malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), or in the alternative for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida, this 4th day of September 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**